JOURNAL ENTRY AND OPINION
On March 10, 1999, the applicant, Larry Stewart, applied to reopen this court's judgment in State of Ohio v. Larry Stewart
(Nov. 19, 1998), Cuyahoga App. No. 73255, unreported, in which this court affirmed his convictions and sentences for aggravated murder, attempted murder, aggravated robbery, kidnapping and having a weapon while under disability. Although the State of Ohio did not file a brief in opposition, the court for the following reason denies the application, sua sponte.
 PROCEDURAL AND FACTUAL BACKGROUND
On the night of May 29, 1996, Larry Stewart and William Logan both armed with guns robbed the Bell apartment in which there were over a half dozen people. During the robbery Mr. Stewart forced three people in the front room to lie down on the floor, while Mr. Logan went to the back of the apartment down a hallway. When Mr. Logan discovered that the two individuals there did not have any money on them, he forced them at gun point to walk toward the front of the apartment via the hallway. At this point several men came from a room adjacent to the hallway, and a struggle ensued among two of the Bells and Mr. Logan. When Mr. Stewart heard this, he went to aid Mr. Logan. Mr. Stewart shot and killed Mark Turner, a friend of the Bell family, and he also shot and seriously wounded Nathan Bell. Mr. Logan and Mr. Stewart fled. However, the police quickly caught Curtis Mitchell, an accomplice, and he identified Mr. Logan and Mr. Stewart. The police arrested Mr. Logan within approximately two weeks.
On June 27, 1996, the Grand Jury indicted both Mr. Logan and Mr. Stewart for the following: two counts of aggravated murder pursuant to R.C. 2903.01 (A) and (B) with firearm, mass murder and felony murder specifications; one count of attempted murder with a firearm specification, two counts of aggravated robbery with a firearm specification; two counts of kidnapping with a firearm specification and one count of having a weapon while under disability. Mr. Logan's trial proceeded separately.
On September 2, 1996, Mr. Stewart was arrested in Tacoma, Washington. He waived extradition and was arraigned on September 24, 1996. In October 1996, the detective in charge of the investigation went to the Bells' apartment and showed various photographic arrays separately to each of five witnesses. Three of them identified Mr. Mitchell, Mr. Logan and Mr. Stewart. Two of them, including Kevin Bell, identified Mr. Mitchell and Mr. Logan, but not Mr. Stewart.
However, at trial Kevin Bell made a dramatic in court identification of Mr. Stewart as the man who had shot Mark Turner and his brother. Mr. Stewart presented an alibi defense, including testifying on his own behalf. On June 13, 1997, Mr. Stewart was found guilty on all counts.[1] After the mitigation hearing the jury recommended a sentence of life imprisonment without parole eligibility for thirty years.
On September 4, 1997, the trial court sentenced Mr. Stewart to consecutive terms of incarceration as follows: three years on the firearm specifications, to be served prior to and consecutive with thirty years to life for the aggravated murder conviction; fifteen to twenty-five years for the convictions for attempted murder and each of the convictions for aggravated robbery and kidnapping, and three to five years for the conviction for having a weapon while under disability.
Mr. Stewart timely appealed. His appointed appellate counsel argued the following assignments of error: (1) The trial court erred in admitting patently unreliable eyewitness identifications; (2) The trial court erred and deprived Mr. Stewart of his constitutional rights by failing to give an instruction on voluntary manslaughter; (3) Trial counsel was ineffective by failing to mount an effective mitigation hearing; and (4) the convictions were against the manifest weight of the evidence.
Additionally, Mr. Stewart filed his own pro se brief in which he argued the following: (1) The trial court abused its discretion in denying the appellant's motion for a mistrial and suppression of State witness Kevin Bell in violation of the Sixth
and Fourteenth Amendments to the United States Constitution; (2) The trial court erred in prohibiting the defense from using the State's crime scene photographs for cross-examination in violation of the Fifth and Fourteenth Amendments to the United States Constitution; Mr. Stewart maintained these pictures showed large packages of drugs for shipment and distribution; (3) The trial court erred in sentencing him on each of the charges, when the circumstances showed that they were allied offenses of similar import under R.C. 2941.25; and (4) The trial court erred by not giving cautionary instructions on eyewitness identification testimony in violation of the Fifth andFourteenth Amendments to the United States Constitution.
On November 30, 1998, this court journalized its judgment entry overruling both Mr. Stewart's and his appointed counsel's assignments of error and affirming the convictions and sentences. One hundred days later on March 10, 1999, Mr. Stewart filed this application.
 DISCUSSION OF LAW
Mr. Stewart now raises the following assignments of error: (1) He was denied effective assistance of appellate counsel; Mr. Stewart asserts that his appellate counsel failed to contact him and to become sufficiently familiar with the record so that he would know enough to bring the other assignments of error; (2) The prosecution knowingly used perjured evidence; this argument focuses on Kevin Bell's in court identification after he had not identified Mr. Stewart in the photo array; (3) The trial court improperly dismissed a juror during trial; (4) He was denied his right to be present at the hearing concerning excusing the juror in violation of the Fifth and Fourteenth Amendments to the United States Constitution; (5) The prosecutor made improper remarks during rebuttal arguments which were plain error under theFourteenth Amendment to the United States Constitution.
App.R. 26 (B) (1) and 2 (b) require applications claiming ineffective assistance of appellate counsel to be filed within ninety days from journalization of the decision unless the applicant shows good cause for filing at a later time. Mr. Stewart filed his application one hundred days after this court journalized its opinion. Thus, the application is untimely.
He endeavors to show good cause by arguing that his ignorance of the law impeded him from timely filing. Specifically, he states that he had great difficulties in identifying and researching the issues and that he had only recently learned of the appellate rules and procedures concerning reopening an appeal. This argument is unpersuasive. Mr. Stewart was sufficiently knowledgeable about appellate procedure and law to file his own pro se brief in July of 1998. At that cime State v.Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, had been the law for approximately six years, and Appellate Rule 26 (B) had been issued for five years. Moreover, the courts have long and repeatedly held that ignorance of law is no excuse for untimely filing. State v. Klein (Apr. 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (Mar. 15. 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481; State v. Trammell
(July 24, 1995), Cuyahoga App. No. 67834, unreported, reopening disallowed (Apr. 22, 1996), Motion No. 70493; State v. Cummings
(Oct. 17, 1996), Cuyahoga App. No. 69966, unreported, reopening disallowed (Mar. 26, 1998), Motion No. 92134; and State v. Young
(Oct. 13, 1994), Cuyahoga App. Nos. 66768 and 66769, unreported, reopening disallowed (Dec. 5, 1995), Motion No. 66164. This defect alone is sufficient to dismiss the application.
Furthermore, res judicata properly bars this application. See, generally, State v. Perry (1967), 10 Ohio St.2d 175.226 N.E.2d 104. Res judicata prevents repeated attacks on a final judgment and applies to all issues which were or might have been litigated. In Murnahan the supreme court ruled that res judicata
may bar a claim of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine unjust.
In the present case Mr. Stewart filed his own appellate brief and raised four assignments of error, which this court found were reasonable grounds for appeal. Nothing prevented him from deducing the current arguments when he could formulate arguments relating to constitutional issues, jury instructions, allied crimes of similar import, limitations on cross-examination and eyewitness identification. Indeed, one of Mr. Stewart's current arguments is a variation on the impropriety of Kevin Bell's eyewitness identification. Furthermore, the courts have repeatedly ruled that res judicata bars an application to reopen when the appellant has filed a pro se brief. State v. Tyler
(1994), 71 Ohio St.3d 398, 643 N.E.2d 1150, cert. denied (1995),116 S.Ct. 98; State v. Boone (1996), 114 Ohio App.3d 275,682 N.E.2d 67; State v. Barnes (Mar. 24, 1986), Cuyahoga App. No. 50318, unreported, reopening disallowed (Mar. 4, 1994), Motion No. 36464; State v. Williams (Nov. 12, 1996), Cuyahoga App. No. 69936, unreported, reopening disallowed (Apr. 24, 1997), Motion No. 80441 and State v. Larkins (Oct. 8. 1987), Cuyahoga App. Nos. 52779 and 52780, unreported, reopening disallowed (Aug. 19, 1996), Motion No. 68671. In State v. Reddick (1995), 72 Ohio St.3d 88,90-91, 647 N.E.2d 784, the Supreme Court of Ohio stated: "Neither Murnahan nor App.R. 26 (B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new rounds of appeals."
Accordingly, the application for reopening is denied.
O'DONNELL, J., and PATTON, J., CONCUR.
 ______________________ JAMES M. PORTER ADMINISTRATIVE JUDGE
[1] Before trial the state dismissed Count One.